[No. 35720.   Department Two.   September 7, 1961.]

DALE M. BLY, *Appellant*, v. C. J. MCALLISTER *et al.*, *Respondents.**

*Donald A. Ericson* and *William P. Wimberley*, for appellant.

*Hamblen, Gilbert & Brooke* and *Philip S. Brooke*, for respondents.

HILL, J.—This case poses the question of whether negligence is a necessary element in establishing the liability of the owner of livestock for their trespass upon the land of another in a "stock restricted area." The question arises in consequence of the depredations of a Hereford bull in a herd of registered Aberdeen Angus.

To a court harassed with urgent constitutional problems relating to urban renewal, racial discrimination, financing of toll bridges, due process, and when the right to counsel begins, this is a pastoral interlude. However, there being a substantial backlog of opinions waiting to be written, we shall resist temptation and essay no rhetorical flights of fancy as we assay the legal problem confronting us.

In pastures directly across a county road from each other were the thirty-four registered Aberdeen Angus cows and heifers, together with a bull, and a herd of seventy com-

*Reported in 364 P. (2d) 500.

mercial Hereford cows and three bulls. The Aberdeen Angus herd belonged to the plaintiff; the Hereford herd to the defendants. The pastures were enclosed with barbed wire fences.

The fences were found down at a place directly across the road from each other. No one saw which bull went through which fence, or where the bulls fought, but it is undisputed that one of the defendants' Hereford bulls was found in the plaintiff's pasture.

While differing inferences may be drawn from the testimony, we shall accept for the purposes of this opinion the plaintiff's theory that the defendants' bellicose Hereford bull broke out of the defendants' pasture and into the plaintiff's and there fought with the latter's Aberdeen Angus bull. We can assume, too, that the Hereford was the aggressor and that the Aberdeen Angus withdrew from the affray, after sustaining grievous injuries which necessitated his subsequent destruction (to the plaintiff's damage, it is claimed, in the sum of three thousand dollars). We assume, further, that it is established that there were seven "ill-bred calves" (to use the plaintiff's expression) born to his registered Aberdeen Angus cows and heifers, in consequence of the Hereford bull's trespass in the plaintiff's pasture, to his further claimed damage in the sum of four thousand five hundred dollars.

It was urged by the defendants that they and the plaintiff had exchanged the right to the use of certain lands, for the purpose of making it possible to pasture their respective herds, without having them in adjoining fields; and it was agreed that their herds would not be pastured adjacent to each other. Whether such a contract was made was submitted to the jury, as was the question whether, if made, either the plaintiff or defendants violated it. The jury was instructed that if the defendants had violated such a contract, they were liable for any damages sustained by the plaintiff in consequence of the breach; and, on the other hand, if the plaintiff had violated the contract and the damage complained of occurred in consequence of that breach, the plaintiff could not recover.

There were no exceptions to the instructions on the contract theory, and no assignments of error with reference thereto. If the jury decided the case on the basis that the plaintiff had violated his contract, we would not need to consider the issue now before the court; but, there having been no interrogatories as to the basis of the jury's verdict, there remains the possibility that the jury concluded there was no contract, or no violation, and reached its verdict for the defendants on the basis that they were not negligent, which brings us to the issue raised on this appeal: Is it enough to prove that cattle were running at large in a stock restricted area in order to fasten liability for their trespasses on the owner, or must it be established that he negligently allowed them to run at large?

At common law, the burden was on the owner of domestic animals, such as cattle, to restrain them within his own enclosure. If they trespassed upon the land of another, whether enclosed by fence or not, the trespass was actionable and without regard to fault on the part of the owner of the cattle. *Kobayashi v. Strangeway* (1911), 64 Wash. 36, 38, 116 Pac. 461; 2 Am. Jur. 768 (Animals), § 103.

However, in the western United States, where vast unsettled areas were ideal for open range purposes, such a rule would have been impracticable. The burden, with respect to domestic animals, was reversed for reasons explained in *Kobayashi v. Strangeway, supra* (p. 41), where we said:

"Our fencing statute was originally adopted in 1863 when Washington was a territory. It must be construed with reference to conditions which then prevailed and called it into existence. It is common knowledge that, at the times it was originally enacted and subsequently amended, the territory was sparsely settled; that its public domain was broad and extensive; that private property was less extensive; that public lands were generally used as a vast range for cattle and other stock; that it was more feasible for owners of private property to fence out and exclude cattle pastured upon the public domain, than it was for the owners of such cattle to comply with the common law rule of preventing them from trespassing upon uninclosed private lands. . . ."

With the passing of much of the open range, and the development in many areas of diversified farming, we have had a succession of acts, since 1905[1], designed to give protection in certain areas against livestock running at large. The forerunner of the present act, providing for the creation of districts in which livestock are not to be permitted to run at large, was chapter 25 of the Laws of 1911. We are presently concerned with an amendatory statute (Laws of 1937, chapter 40) which eliminated the requirement for a petition by residents for the creation of such a district and gave the county commissioners authority to initiate the creation of stock restricted areas with the significant proviso that:

" . . . All territory not so designated shall be range area, in which it shall be lawful to permit livestock to run at large." RCW 16.24.010; Laws of 1937, c. 40, § 1.

A new section was added, by the 1937 act, which reads:

"No person owning or in control of any livestock shall willfully or negligently allow such livestock to run at large in any stock restricted area, nor shall any person owning or in control of any livestock allow such livestock to wander or stray upon the right of way of any public highway lying within a stock restricted area when not in the charge of some person." RCW 16.24.065; Laws of 1937, c. 40, § 6.

Our consideration of all the pertinent statutes makes it appear conclusive that this statute lays down a general rule applicable to all livestock, within a stock restricted area, and makes it unlawful to willfully or negligently allow any livestock to run at large in any stock restricted area. There are a number of animals that have been taken out of the classification of "any livestock" by statutes which make it unlawful for them to run at large, with no reference to whether the owner's conduct was willful or negligent. We enumerate a few:

*Swine.* Since 1890[2], it has been unlawful to permit swine to run at large anywhere in the state (RCW 16.12.010), and the owners thereof are liable for all the damage the

[1] Laws of 1905, c. 91, p. 194.
[2] Laws of 1889-90, c. 15, p. 454.

owners or occupants of land may suffer by their trespass. RCW 16.12.020.

*Sheep and goats.* It has been unlawful for sheep (since 1888[3]) and for goats (since 1945[4]) to enter any lands, enclosed or unenclosed, not belonging to their owner (other than the public lands of the United States). RCW 16.12.090.

*Horses, mules, and asses.* Comparatively recently (1951[5]), these animals were taken out of the "any livestock" category and it was made unlawful for the owner of any such animals to permit them to run at large and not under the care of a herder (provided, however, they may run at large upon land belonging to the state or the United States under certain conditions). RCW 16.13.010.

*Stallions.* It has been unlawful (since 1895[6]) for the owner of a stallion to permit him to run at large. RCW 16.16.010. (See next classification.)

*Stud horses, stud mules, jackasses, ridglings or stags.* The code of 1881 (§ 2549) imposed liability upon the owners of any of the animals named, if any of them "while running at large out of the enclosed grounds of the owner or keeper" should damage any other animal by biting or kicking him, or should do any damage "to person or property of any kind whatever." RCW 16.16.040.

The legislature has thus made it unlawful for the owner of certain specified animals to permit them to run at large; and unlawful for the owner of livestock generally to "willfully or negligently allow such livestock to run at large in any stock restricted area." There has been some special legislation relative to bulls (see RCW 16.20), but cattle, including bulls, have been permitted to remain in the general category of livestock in stock restricted areas, and RCW 16.24.065 remains the statute with which we are concerned.

The trial court here instructed that the pastures of the parties were in a "stock restricted area," and that the

---

[3]Laws of 1887, c. 115, p. 203.
[4]Laws of 1945, c. 33, p. 73.
[5]Laws of 1951, c. 31, p. 61.
[6]Laws of 1895, c. 124, p. 335.

owner of cattle in such an area had the duty to keep them within his own pasture; that the natural propensity of a bull to roam into other pastures, particularly during the breeding season, is so notorious that the owner of a bull is presumed to have notice of it and to take proper measures to prevent it; and then, relying on the word "negligently" in RCW 16.24.065, which we have just quoted, he concluded his instruction:

"Whether or not the defendants took proper measures to restrain their bull is the pivotal question in the determination of negligence. The defendants are to be judged in the light of the acts of a reasonably prudent man. The question for you to determine is whether or not the precautionary measures taken by the defendants were all that would be taken by a reasonably prudent man under the circumstances which existed in this case. If so, the defendants were not guilty of negligence. On the other hand, if the defendants failed to take all of the precautionary measures that a reasonably prudent man would have taken to restrain his bull, and such failure resulted in the injury complained of, then the defendants are guilty of negligence and are liable to the plaintiff for damages."

The plaintiff insists that the quoted portion of the instruction is wrong, and that the failure of the defendants to keep their bull in their own pasture, in itself, renders them liable for all the damages sustained by the plaintiff.

To escape what appears to us to be the clear meaning of the statute, the plaintiff, in his brief, urges,

"When the bull of the respondents [defendants] escaped from his pasture and was upon the county road separating the two pastures he was 'running at large' within the contemplation of RCW 16.24.065, *supra*. Had injury or damage occurred at that point, wilfullness or negligence would have been an issue.

"However, when the bull breached the appellant's [plaintiff's] fence and entered his pasture a trespass was committed. . . . ."

and that the bull was not running at large within the meaning of the statute when it was committing a trespass upon the plaintiff's land.

We have divided RCW 16.24.065, at this point, to emphasize its division into two parts.

(1) "No person owning or in control of any livestock shall willfully or negligently allow such livestock to run at large in any stock restricted area,

(2) "nor shall any person owning or in control of any livestock allow such livestock to wander or stray upon the right of way of any public highway lying within a stock restricted area when not in the charge of some person." RCW 16.24.065; Laws of 1937, c. 40, § 6.

The legislature clearly knew there was a difference between "in any stock restricted area" and "upon the right of way of any public highway lying within a stock restricted area." The latter is only a part of the former. While the section is subject to the interpretation that the "willfully or negligently" has no reference to livestock found *on* the highway, there is certainly no basis to justify the interpretation suggested by plaintiff: That "willfully or negligently" had no application after the Hereford bull left the highway and breached the plaintiff's fence.

It is clear that the plaintiff cannot here rely on either the "fence law"[7] (RCW 16.60.015), or the "breachy animals law"[8] (RCW 16.60.075).

While the "fence law" gave the owner of property, having a lawful fence in good repair around his enclosure, the right to recover for all damages caused by animals breaking through such fence, it has some archaic-eighteen-sixty-nine requirements relative to having the fences examined and the damages assessed within five days by three "reliable, disinterested parties and practical farmers." It is conceded that this action is not under that statute, and whether the plaintiff's property was fenced or unfenced is not material.

The "breachy animals law" dates back to 1869 and provides that:

"The owner of any animal that is unruly, and in the habit of breaking through or throwing down fences, if after being notified that such animal is unruly and in the habit of breaking through or throwing down fences as aforesaid,

---

[7]Laws of 1869, § 3, p. 324.
[8]Laws of 1869, § 12, p. 326.

he shall allow such animal to run at large, shall be liable for all damages caused by such animal, and any and all other animals, that may be in company with such animal."

While the plaintiff's original complaint seemed based on this statute, the amended complaint, on which the case was tried, gave no indication of any such reliance. There was no evidence pointing to which, if any, of the defendants' three Hereford bulls was unruly and in the habit of breaking through fences.

We conclude that the plaintiff's action must be based on RCW 16.24.065, and thereunder it was material and proper for the jury to consider, under proper instructions, whether the defendants had negligently allowed their bull to run at large in a stock restricted area.

The judgment is affirmed.

FINLEY, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.